UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|   |   |   |
|---|---|---|
| VICTOR L. JORDAN. SR., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:24-cv-251 (VAB) |
| | : | |
| MARTIN, et al., | : | |
| Defendants. | : | |
| | : | |

**INITIAL REVIEW ORDER**

Victor L. Jordan, Sr. ("Plaintiff"), a sentenced inmate,[1] has filed a Complaint *pro se* under 42 U.S.C. § 1983. He names sixteen Defendants, Warden Martin, Acting Warden Oles, Deputy Warden Perez, Lieutenant Pearson, Lieutenant Bowers, Officer Fiore, Officer Silva, Mental Health Michelle, John Doe 1, John Doe 2, King, Kravies, Larose, Colleen Frappier, and J. Brennan.

Mr. Jordan alleges violation of his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments; the Mental Health Systems Act, 42 U.S.C. § 9501, et seq.; the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.; the Rehabilitation Act, 29 U.S.C. § 794; and the Protection and Advocacy for Mentally Ill Individuals Act, 42 U.S.C. § 10801, *et seq*., He names all Defendants in their individual and official capacities, but requests no relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought

---

[1] Information available on the Department of Correction website shows that Mr. Jordan was sentenced on December 5, 2008 to a term of imprisonment of eighty-one years. *See* www.ctinmateinfo.state.ct.us/detailsupb/asp?id_inmt_num=165080. The Court may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425(KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

Based on this initial review, the case will proceed on Mr. Jordan's ADA and RA claims as directed to Deputy Warden Perez in his official capacity, the First Amendment retaliation claim against Lieutenant Bowers in her individual capacity, the Eighth Amendment conditions of confinement claim regarding bedding against Lieutenant Pearson in his individual capacity, and the Fourteenth Amendment equal protection claim against Lieutenant Bowers. The Fourteenth Amendment substantive due process claim will proceed against Lieutenant Bowers and Officer Fiore only if, in response to this Order, Mr. Jordan waives for all time any challenge to the disciplinary sanction of forfeiture of RREC.

Mr. Jordan's First Amendment claims for denial of access to the courts, interference with the administrative remedies process, and denial of telephone access; the Fourth Amendment claims; the Fifth Amendment claims; the section 1983 claims against all defendants in their official capacities; the ADA and RA claims against all defendants in their individual capacities and against all defendants except Defendant Perez in their official capacities; and the claims for violation of 42 U.S.C. §§ 9501, 10801 are **DISMISSED** with prejudice under 28 U.S.C. § 1915A(b)(1).

The First Amendment retaliation claim against Defendants Oles and Perez, the Eighth Amendment claim for deliberate indifference to medical needs against Defendants Pearson and Michelle, the Eighth Amendment conditions of confinement claim regarding the lack of a handicap shower against Defendant Perez, the claim against Warden Martin, and the claims against Officer Silva, John Doe 1, and John Doe 2 against whom Mr. Jordan has not identified any claims, are DISMISSED without prejudice under 28 U.S.C. § 1915A(b)(1).

If Mr. Jordan wishes to proceed with this Complaint or file an Amended Complaint, he must do so, consistent with this Order, as further described below, by **August 2, 2024**.

## I.   <u>Factual Allegations</u>[2]

On October 30, 2023, Mr. Jordan allegedly was out of his cell during morning tier recreation awaiting a pre-scheduled visit with his attorney. ECF No. 1 at 5. Lieutenant Bowers allegedly entered the unit, singled out Mr. Jordan, and told him to put on his tan shirt which was part of the uniform of the day. *Id.* When Mr. Jordan allegedly questioned the order, Lieutenant Bowers allegedly told him that, if he did not put on the shirt, he would go to segregation. *Id*.

Mr. Jordan allegedly asked if he could have the option of locking up in his cell and Lieutenant Bowers allegedly agreed. *Id.* Mr. Jordan alleges that he was intending to lock up in his cell, but allegedly told Lieutenant Bowers that she was violating his equal protection rights because other inmates in the unit were not wearing the tan shirts. *Id.* Mr. Jordan also allegedly asked for one hour of exercise which Lieutenant Bowers refused whereupon Mr. Jordan allegedly requested that she enter the denial in the logbook. *Id.* Lieutenant Bowers then allegedly told Mr. Jordan he was going to segregation for flagrant disobedience. *Id*. at 6. Mr. Jordan believes that Lieutenant Bowers sent him to segregation in retaliation because Mr. Jordan had

---

[2] For purposes of initial review, the Court considers all of the following allegations to be true.

filed grievances against her in the past and had helped another inmate file a lawsuit against her. *Id.*

On October 27, 2023, while he was in his cell, Mr. Jordan allegedly had had an argument with Lieutenant Bowers about allegedly retaliatory actions by correctional staff and stated his intent to file lawsuits. *Id*. Mr. Jordan and Lieutenant Bowers each allegedly accused the other of making threats. *Id*. Mr. Jordan allegedly told Lieutenant Bowers that his attorney had scheduled a visit for October 30, 2023. *Id.* Mr. Jordan further alleges that Lieutenant Bowers entered the housing unit on October 30, 2023, at a time she never visited the unit and assumes that she did so to prevent Mr. Jordan from speaking to his attorney. *Id.*

Mr. Jordan allegedly suffers from back issues and mental illness. *Id*. ¶ 16. When he was taken to segregation, Mr. Jordan allegedly "made it clear to all present" that he required additional bedding, but he was placed on Behavior Observation Status with only one mattress. *Id*. ¶ 17. Mr. Jordan allegedly began to feel an anxiety episode beginning and asked the officer on tour to call mental health staff to address his feelings of self-harm; he was ignored. *Id*. ¶ 18.

Later, Mr. Jordan allegedly became aware of blood on the cell window and painful injuries to his hands. *Id*. ¶ 19. Unit Manager Pearson and mental health worker Michelle allegedly were standing outside his door. *Id*. When Mr. Jordan allegedly asked them what had happened, they said that he "did that to [him]self." *Id*. ¶ 20. Mr. Jordan allegedly requested medical attention, a camera to document the incident, and a call to the state police. *Id*.

Unit Manager Lieutenant Pearson allegedly denied the requests and told Mr. Jordan that, if he wanted to get out of segregation, he should "clean up the blood and stop acting like a child." *Id*. ¶ 21. Neither mental health worker Michelle nor any officers on first or second shift allegedly would provide medical attention to clean Mr. Jordan's wounds. *Id*. ¶ 22. The nurse

distributing evening medication allegedly cleaned Mr. Jordan's wounds and applied bacitracin. *Id*. ¶ 23.

A few hours after the incident, Lieutenant Pearson allegedly returned to Mr. Jordan's cell and tried to make him clean up the blood. *Id*. ¶ 25. Lieutenant Pearson allegedly told Mr. Jordan that, if he did not clean the blood, Lieutenant Pearson would say that Mr. Jordan was disruptive and uncooperative and prolong his stay in segregation and on Behavior Observation Status. *Id*. At this time, Mr. Jordan allegedly was lying down partly on the floor and partly on the bed to address his back pain. *Id*. Lieutenant Pearson allegedly ordered Mr. Jordan to get up to speak with him, but when Mr. Jordan stated he could not get up because of his back pain, Lieutenant Pearson allegedly told him that he would remain on the floor in pain. *Id*. ¶ 26.

On October 31, 2023, Mr. Jordan alleges that he was feeling a little better, so he went to the door to speak with Lieutenant Pearson. *Id*. ¶ 27. Mr. Jordan allegedly agreed to sign the disciplinary reports to expedite his release from segregation although he did not want to. *Id*. ¶¶ 27–28. Mr. Jordan allegedly told Lieutenant Pearson that he would not clean up the blood because he believed the cell to be a crime scene. *Id*. ¶ 29. Around noon, a doctor from the mental health unit allegedly determined that Mr. Jordan could be removed from Behavior Observation Status and placed on Administrative Detention status pending the outcome of the disciplinary charges. *Id*. ¶ 30.

Mr. Jordan alleges that he constantly reports correctional staff for various violations including having and using i-phones and i-phone watches in the facility, eating and cooking in the housing unit, sleeping, reading magazines and novels, and having affairs with other staff members and allegedly is retaliated against for these reports. *Id*. ¶ 32. Mr. Jordan also alleges that the staff has been in the same unit for longer than the prescribed time and, as a result,

became familiar with some inmates and extended them privileges. *Id.* ¶ 33. These staff members, none of whom are identified as defendants in this case, allegedly label as snitches Mr. Jordan and other inmate who report their behavior. *Id.* ¶ 34.

Defendants Frappier and Brennan allegedly are Health Services Administrative Remedy Coordinators. *Id.* They allegedly deny or reject Mr. Jordan's Health Services Remedies ("HSRs") or requests for accommodation and pass the issue to another department, *i.e.*, from medical to custody. *Id.* Mr. Jordan further alleges that Corrigan Correctional Center did not post the name of the ADA coordinator during the time he was incarcerated there preventing him from seeking accommodations under the ADA. *Id.* ¶ 35.

Officer Fiore allegedly wrote the false report that Lieutenant Bowers used to "falsely imprison" Mr. Jordan. *Id.* ¶ 37. The report states that the incident occurred between Mr. Jordan and Officer Fiore, instead of Lieutenant Bowers. *Id.* Officer Fiore alleged stated in the report that Mr. Jordan became agitated and challenged his authority, actions Mr. Jordan alleges are routine. *Id.* ¶ 38.

The shower in the segregation unit allegedly is not handicap-accessible. *Id.* ¶ 39. Mr. Jordan alleges that his grievance about this same shower was upheld in June 2023. *Id.* However, the shower had not been changed when Mr. Jordan returned to the segregation unit in October 2023. *Id.* As a result, Mr. Jordan allegedly was unable to shower for one week. *Id.*

Mr. Jordan alleges that it is well-documented in his records that if he is secured in a closed environment, he likely will experience a severe anxiety attack, as he has on multiple occasions. *Id.* ¶ 40.

On November 1, 2023, disciplinary investigators Hotchkiss and Colletti allegedly served him the disciplinary reports and allegedly confirmed that, if Mr. Jordan did not plead guilty, he

would remain in segregation for over twenty days. *Id.* ¶¶ 42–43. Mr. Jordan allegedly told the investigators that he was signing the report under duress because he wanted to be released from the unit before he harmed himself. *Id.* ¶ 43.

Mr. Jordan allegedly asked the investigators whether they had viewed the video footage of the incident and, when they allegedly said they had, commented that the charge should be dismissed because the footage would show the charge was false. *Id.* ¶ 44. At this time, Acting Warden Oles and Deputy Warden Perez allegedly walked by but refused to speak to Mr. Jordan. *Id.* Mr. Jordan alleges that he submitted requests to both defendants but was ignored. *Id.* He contends that the "active wardens" failed to respond to his requests complaining about officers Fiore and Silva and his fears of retaliation. *Id.* ¶ 47.

On November 3, 2023, Mr. Jordan allegedly told Deputy Warden Perez and the investigators that defendants Perez and Oles failed to respond to his requests as an act of retaliation for his "writing them up" which resulted in the actions of defendants Bowers, Silva, and Fiore. *Id.* ¶¶ 49–50. Mr. Jordan allegedly tried to give Deputy Warden Perez a few inmate requests, but Deputy Warden Perez refused to take them. *Id.* ¶ 50. When Mr. Jordan asked Deputy Warden Perez why there was no handicap shower in the segregation unit and said he had not been able to shower for several days, Deputy Warden Perez allegedly just told Mr. Jordan that he should not have come to segregation. *Id.*

Mr. Jordan allegedly remained in the segregation cell for several days with inadequate bedding and was unable to clean or bandage his allegedly infected hands. *Id.* ¶ 51.

On October 23, 2023, at Cheshire Correctional Institution, Defendant Frappier entered Mr. Jordan's housing unit and allegedly said to Officers Fiore and Silva, "he is out of here. he just filed in his HSAR a threat. he's done." *Id.* ¶ 52. Mr. Jordan alleges that, in the request, he did

not threaten staff, he just informed them that he would sue them. *Id*. ¶ 54.

Mr. Jordan alleges that he made many requests to use the phone, but Officers Kravies and Larose denied the requests. *Id*. ¶ 58.

On November 1, 2023, mental health worker Michelle allegedly approached Mr. Jordan's cell. *Id*. ¶ 59. She allegedly recommended that Mr. Jordan stop being combative and act normally. *Id*. ¶ 60. He allegedly responded that he could not "erase 40 years of trauma." *Id*.

## II.   <u>STANDARD OF REVIEW</u>

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia*, the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a Mr. Jordan plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," see Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and

8

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by pro se plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## III.   <u>DISCUSSION</u>

The Court considers whether Mr. Jordan can state plausible claims for relief for violation of his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments; the Mental Health Systems Act, 42 U.S.C. § 9501, *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; the Rehabilitation Act, 29 U.S.C. § 794; and the Protection and Advocacy for

Mentally Ill Individuals Act, 42 U.S.C. § 10801, et seq., the provisions listed in the jurisdictional statement.[3]

    **A.**    <u>**The First Amendment Claims**</u>

Mr. Jordan's allegations can be reasonably construed to assert four First Amendment claims: denial of access to the courts, interference with the administrative remedy process, retaliation, and denial of telephone access.

The Court will address each in turn.

    *1. Access to Courts*

"As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit. This is because a plaintiff has no right to maintain two actions on the same subject in the same court against the same defendants at the same time." *Sacerdote v. Commack Larhette Advisors, LLC*, 939 F.3d 498, 504 (2d Cir. 2019) (internal citations and quotation marks omitted). The rule is properly invoked if the actions are "the same[,]" *i.e.*, there must be "the same parties . . . the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the ... essential basis of the relief sought must be the same." *Id*. (quoting *United States v. The Haytian Republic*, 154 U.S. 118, 124 (1894) (internal quotation marks omitted). This practice, commonly referred to as the prior pending action doctrine is intended to avoid conflicting judgments and promote judicial economy. *See Curcio v. Hartford Fin. Servs. Grp*., 472 F. Supp. 2d 239, 243 (D. Conn. 2007) (citation omitted). The district court also may dismiss individual claims under the prior pending action doctrine. *See Ziemba v. Clark*, 167 F. App'x 831, 832 (2d Cir. 2006) (affirming dismissal of claims included in prior actions under prior pending action doctrine).

---

[3] Mr. Jordan does not set forth a list of the claims he intends to pursue in this case. Instead, he included argument in his statement of facts and lists various amendments and statutes in his jurisdictional statement.

Mr. Jordan alleges that Defendant King denied him access to the courts by failing to electronically file documents on his behalf. Mr. Jordan has included this same access to courts claim based on the same facts in another of his cases, *Jordan v. Chiaroo*, No. 3:24-CV-204 (VAB), which he filed on February 14, 2024, about a week before he filed this case.

Accordingly, as he cannot proceed on the same claim in two cases at the same time, the claim against Mr. King will be dismissed with prejudice under the prior pending action doctrine.

### 2. *Administrative Remedies*

Although there is a constitutional right of access to the courts, *Abrams v. Erfe*, No. 3:17-CV-1570 (CSH), 2018 WL 691714, at *16 (D. Conn. Feb. 2, 2018) ("Prisoners have a constitutional right of access to the courts that may not be unreasonably obstructed by the actions of prison officials." (quoting *Baker v. Weir*, No. 16-CV-1066 (JAM), 2016 WL 7441064, *2 (D. Conn. Dec. 27, 2016))), the U.S. Supreme Court has never held that the Constitution requires state prisons to have formal grievance procedures. In *Riddick v. Semple*, 731 F. App'x 11 (2d Cir. 2018), the Second Circuit rejected a state prisoner's constitutional claim regarding prison grievance procedures. The court noted that the prisoner's "claim that defendants violated his due process rights by restricting his access to the prison's grievance procedures confused a state-created procedural entitlement with a constitutional right. However, neither state policies nor state statutes create federally protected due process entitlements to specific state-mandated procedures." *Id*. at 13 (summary order) (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (internal quotation marks and citation omitted).

Mr. Jordan asserts a claim based on his inability "to grieve righteously, in accordance with the U.S. Constitution, to redress and object by way of the rules set by the P.L.R.A." Doc. No. 1 ¶ 46. As Mr. Jordan has no constitutional right to grievance procedures or to have his

grievances properly handled, his First Amendment claim fails as a matter of law. *See Lopez v. McGill*, No. 3:08-CV-1931(CSH), 2009 WL 179787, at *6 (D. Conn. Jan. 21, 2009) ("plaintiff's claim that the grievance restriction directly limits his First Amendment right to petition the government for redress of grievances fails as a matter of law").

Further, a denial of access to prison grievance procedures does not affect Mr. Jordan's access to the federal courts. Under the Prison Litigation Reform Act ("PLRA"), Mr. Jordan is required to exhaust available administrative remedies before filing a federal lawsuit regarding prison conditions. *See* 42 U.S.C. § 1997e(e) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court identified three circumstances where a court could find that administrative remedies are not available to a prisoner under the PLRA. One such circumstance is when "prison administrators thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation." *Id*. at 644. If Mr. Jordan was thwarted from fully exhausting his claims, he could argue that administrative remedies were not available to him should the defendants move to dismiss the claims on exhaustion grounds.

Accordingly, Mr. Jordan's First Amendment claims for interference with the administrative remedies process are dismissed with prejudice.

### 3. Retaliation

To state a cognizable First Amendment retaliation claim, Mr. Jordan must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action

against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter,* 938 F.3d 21, 40 (2d Cir. 2019).

Filing an administrative remedy is considered a protected activity. *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (filing a lawsuit or grievance is constitutionally protected activity and will support a retaliation claim); *Stewart v. Ayala*, No. 3:20-CV-1938(CSH), 2022 WL 4356467, at *8 (D. Conn. Sept. 20, 2022) (protected speech or activity includes "filing a lawsuit, an administrative complaint, or a prison grievance").

The Second Circuit has defined adverse action as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Wrobel v. County of Erie*, 692 F.3d 22, 31 (2d Cir. 2012). Whether a particular action is considered adverse depends on the circumstances. *Id.* (the definition of adverse action "is not static across contexts," but "must be tailored to the difference circumstances in which retaliation claims arise. Prisoners may be required to tolerate more than public employees ... before a retaliatory action taken against them is considered adverse." (internal quotation marks and citation omitted)).

Mr. Jordan alleges that Lieutenant Bowers issued the disciplinary report for flagrant disobedience in retaliation for his filing grievances against her. He also alleges that Acting Warden Oles and Deputy Warden Perez did not respond to his inmate requests in retaliation for "writing them up." Thus, Mr. Jordan satisfies the first element. For the other elements, the Court will take them up separately with respect to each Defendant.

   a.   Lieutenant Bowers

Mr. Jordan alleges that Lieutenant Bowers issued the false disciplinary report for flagrant disobedience because he had filed grievances against her. "Retaliating against inmates

for filing grievances by filing false disciplinary reports violates the First Amendment." *Richard v. Fischer*, 38 F. Supp. 3d 340, 358 (W.D.N.Y. 2014) (citing cases).

Mr. Jordan does not allege when he filed the grievances against Lieutenant Bowers, but, as he concedes that he constantly filed grievances regarding staff conduct.

Accordingly, the Court will permit the retaliation claim against Lieutenant Bowers to proceed for further development of the record.

      b.  Acting Warden Oles and Deputy Warden Perez

Mr. Jordan alleges only that Acting Warden Oles and Deputy Warden Perez did not respond to his inmate requests. He does not allege facts showing that they actually received and read the requests. Even if they had, this action is insufficient to be considered adverse action.

Although courts in this Circuit have not addressed the issue, courts in other circuits have held that "[t]he denial of a grievance, standing alone, is de minimis action and insufficient to establish a claim of First Amendment retaliation." *Voits v. Brown*, No. 2:22-CV-01365-MC, 2023 WL 2447474, at *1 (D. Or. Feb. 23, 2023) (citing cases), *appeal dismissed*, 2023 WL 10248708 (9th Cir. Nov. 17, 2023). Here, the failure to respond to an inmate request does not even deny Mr. Jordan the ability to file a grievance. Thus, the action does not constitute an adverse action to support a retaliation claim.

Accordingly, the retaliation claim will be dismissed against defendants Oles and Perez.

      4.  Telephone Access

Neither the United States Supreme Court nor the Second Circuit has held that prisoners have a First Amendment right to telephone use. *Pape v. Cook*, No. 3:20-CV-1324(VAB), 2021 WL 2186427, at *6 (D. Conn. May 28, 2021) (citing cases). Indeed, "[d]istrict court within the Second Circuit have held that restrictions on telephone usage do not infringe on inmates' First

14

Amendment rights if alternate means of communicating with others outside of prison are available." *Id*. (citing cases).

Mr. Jordan alleges that defendants Kravies and Larose denied his request to use the phone on multiple occasions. As Mr. Jordan does not allege that he did not have other means of communication, he fails to state a plausible claim against defendants Kravies and Larose.

Accordingly, this claim will be dismissed.

**B.      The Fourth Amendment Claim**

Mr. Jordan characterized his confinement in segregation as "false imprisonment" in violation of his rights under the Fourth Amendment.

But claims for false imprisonment, whether brought under section 1983 or under state law, are analyzed under state law. *See El Badrawi v. Department of Homeland Sec.*, 579 F. Supp. 2d 249, 269 (D. Conn. 2008) ("The elements of false arrest/false imprisonment under Connecticut law are essentially the same elements needed to articulate a Fourth Amendment violation.") (citation omitted). Under common law, there is no claim for false imprisonment where the claim relates only to the conditions of confinement. "If a private or state actor is entitled to hold a prisoner, liability for false imprisonment never rises or falls based on the conditions under which he is held . . . . The inquiry ends, at lease for purposes of the tort of false imprisonment, upon the finding that some form—any form—of confinement was legally permitted." *McGowan v. United States*, 94 F. Supp. 3d 382, 291 (E.D.N.Y. 2015) (citing *Liranzo v. United States*, 690 F.3d 78, 94 (2d Cir. 2012); *see also Joyner v. Wezner*, No. 418200, 2000 WL 1658285, at *4 (Conn. Super. Ct. Oct. 5, 2000) ("If correctional officials have authority to confine an inmate, they cannot sensibly be held liable for the tort of false imprisonment because they have chosen to confine him in one correctional facility rather than another.").

On December 5, 2008, Mr. Jordan was sentenced to an eighty-one-year term of imprisonment. He is scheduled to be released on November 20, 2088. *See* www.ctinmteinfo.state.ct.us/detailsupv.ask?id_inmt_num=165080 (last visited Mar. 18, 2024). As Mr. Jordan was in the custody of the Department of Correction during the period in question, there is no factual basis for a false imprisonment claim.

Accordingly, the Fourth Amendment claim is dismissed with prejudice.

### C.     The Fifth Amendment Claim

Mr. Jordan lists the Fifth Amendment in his jurisdiction section but alleges no facts identifying a Fifth Amendment claim. Mr. Jordan cannot to bring his Fourteenth Amendment due process claims under the Fifth Amendment as the Fifth Amendment Due Process Clause applies to federal, not state, inmates. *See Jackson v. Walker*, No. 3:22-CV-1951(OAW), 2022 WL 16573562, at *3 (D. Conn. Nov. 1, 2022) (citing *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009)) ("a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the Fifth Amendment if the pretrial detainee is held in federal custody, or the Due Process Clause of the Fourteenth Amendment if held in state custody").

Accordingly, any Fifth Amendment claim is dismissed with prejudice.

### D.     The Eighth Amendment Claims

Mr. Jordan alleges that Lieutenant Pearson and mental health worker Michelle were deliberately indifferent to his medical needs because they refused to call medical assistance to address Mr. Jordan's injuries from striking the door. He also contends that the conditions in the segregation unit were unconstitutional because he was denied adequate bedding and there was no handicap shower.

The Court will address each of these Eighth Amendment claims in turn.

### 1. The Deliberate Indifference to Medical Needs Claim

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks and citation omitted). Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

A claim for deliberate indifference to medical needs is comprised of objective and subjective elements. Objectively, the plaintiff must allege a "sufficiently serious" medical condition. *Spavone,* 719 F.3d at 138 (citation omitted). To determine whether a condition is "serious," courts consider whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted). Subjectively, the plaintiff must allege that the defendant "knew of and disregarded the plaintiff's serious medical needs." *Id.* at 703. This culpable mental state exceeds mere negligence and is akin to criminally reckless intent. *See Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994); *Zafrin v. Department of Corr.*, No. 3:22-cv-1339 (KAD), 2023 WL 8653940, at *5 (D. Conn. Dec. 14, 2023). In addition, a disagreement over the treatment provided does not show deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance*, 143 F.3d at 703); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment . . . . [T]he essential test

17

is one of medical necessity and not one simply of desirability." (internal quotation marks and citation omitted)).

Mr. Jordan alleges that, Lieutenant Pearson and mental health worker Michelle found him with cut and bloody hands after he had repeatedly struck the cell door with his hands. Both observed his injuries but did not call a nurse or send him to the medical unit so his wounds could be cleaned and treated. Mr. Jordan does not allege facts regarding the extent of the injuries to his hands. He only alleges that, later that evening, a nurse cleaned his hands and applied bacitracin to his wounds. The facts alleged do not demonstrate an injury significantly affecting daily activities or causing chronic and substantial pain. Thus, Mr. Jordan fails to allege facts to support a claim for deliberate indifference to medical needs.

Accordingly, this claim is dismissed without prejudice.

### 2.   The Conditions of Confinement Claim

To prevail on a claim for unconstitutional conditions of confinement, Mr. Jordan must present evidence demonstrating "an objective component—that the deprivation 'was sufficiently serious that he was denied the minimal civilized measure of life's necessities'—and a subjective component—that the defendant[] 'acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety.'" *Raynor v. Feder*, No. 3:20-cv-1343(SVN), 2023 WL 6295647, at *8 (D. Conn. Sept. 27, 2023) (quoting *Washington v. Artuz*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order)).

The objective component requires the court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). The subjective component requires Mr. Jordan to show that the defendant

knew that he faced a substantial risk to his health and disregarded that risk. *See Phelps v. Kapnolas*, 308 F.3d 180, 185-86 (2d Cir. 2002) (defendant must have been "aware of facts from which the inference could be drawn that a substantial risk of harm exist[ed] and . . . also dr[ew] that inference") (citation omitted).

### a.   Bedding

Courts have found that "the condition of a prisoner's mattress may be so inadequate as to constitute an unconstitutional deprivation." *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013). Thus, for purposes of initial review only, the Court will assume that Mr. Jordan plausibly alleges the objective component of the test. Mr. Jordan alleges that he repeatedly requested additional bedding from Lieutenant Pearson and that Lieutenant Pearson observed him in pain because of the inadequate bedding. Thus, he has plausibly alleged that Lieutenant Pearson was aware of and disregarded Mr. Jordan's need. The conditions claim regarding the bedding will proceed against Lieutenant Pearson for further development of the record.

### b.   Shower

Mr. Jordan alleges that he raised his issue about the lack of a handicap shower with Deputy Warden Perez and asked why the matter had not been corrected as Mr. Jordan had previously prevailed on a grievance on this same issue.

Under the Eighth Amendment, inmates have a constitutional right to sanitary living conditions and the necessary materials to maintain adequate personal hygiene. *Id.* at 127 (citing cases for the proposition that "the failure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional violation"). A "denial of showers rises to the level of an Eighth Amendment violation when such a denial deprives the prisoner of basic human needs." *Dillon v. City of N.Y.*, No. 12 Civ. 7112 (LAP), 2013 WL 3776167, at *2

(S.D.N.Y. July 18, 2013). Courts in the Second Circuit, however, have held that the denial of showers for up to two weeks—longer than the denial Mr. Jordan alleges—does not objectively rise to the level of a constitutional violation. *See, e.g., Crichlow v. Fischer*, No. 9:17-CV-00194 (TJM/TWD), 2017 WL 6466556, at *15 (N.D.N.Y. Sept. 5, 2017) ("[T]he denial of showers for as long as two weeks is not sufficiently serious to state a constitutional claim); *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) ("[A] two-week suspension of shower privileges does not suffice as a denial of basis hygienic needs . . . .") (internal quotation marks omitted).

Mr. Jordan alleges that he was confined in segregation only for "several days." ECF No. 1 ¶ 51. The Disciplinary Process Summary Report attached to the Complaint shows that he was sanctioned with only four days confinement in punitive segregation. ECF No. 1 at 45.

Accordingly, as this was significantly less than two weeks, Mr. Jordan fails to plausibly allege a conditions of confinement claim based on the lack of a handicap shower.

### E.     The Fourteenth Amendment Claims

Mr. Jordan asserts Fourteenth Amendment due process claims against several defendants regarding the disciplinary hearing and a Fourteenth Amendment equal protection claim against defendant Bowers for singling him out for not wearing a tan shirt.

The Court will address these separate claims in turn.

#### 1.   *Due Process*

Mr. Jordan contends that the disciplinary report for flagrant disobedience was false and that he was denied due process. Specifically, he alleges that the confrontation was between Mr. Jordan and Lieutenant Bowers, but Officer Fiore issued the disciplinary report stating that the confrontation had been between Officer Fiore and Mr. Jordan. He further alleges that the investigators told him that they had reviewed video footage of the incident but declined to admit

that the recording did not show him speaking to Officer Fiore.

The issuance of a false disciplinary report is insufficient, in and of itself, to support a claim for denial of due process. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). "A false disciplinary report 'violates due process only where either procedural protections were denied that would have allowed the inmate to expose the falsity of evidence against him or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights.'" *Fonck v. Semple*, No. 3;18-CV-1283(KAD), 2019 WL 1763081, at *3 (D. Conn. Apr. 22, 2019) (quoting *Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005)). Mr. Jordan alleges that the disciplinary report was retaliatory. Thus, Mr. Jordan has alleged a substantive, rather than a procedural due process claim. *See Steele-Warrick v. Microgenics Corp.*, 671 F. Supp. 3d 229, 241 (E.D.N.Y. 2023) (explaining that *Sandin v. Conner*, 515 U.S. 472 (1995), applies to procedural due process claims but not to substantive due process claims) (citing cases); see also *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (explaining that substantive due process "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them").

The disciplinary process summary report attached to the Complaint shows that Mr. Jordan was sanctioned with four days confinement in punitive segregation, thirty days loss of mail, thirty days loss of commissary, and forfeiture of 15 days of RREC, Risk Reduction Earned Credit. *See* ECF No. 1 at 45. The Second Circuit has held that where an inmate has received "mixed sanctions" at a disciplinary hearing, *i.e.*, sanctions affecting both his conditions of confinement and the duration of his confinement, he cannot pursue a due process claim under section 1983 unless he foregoes, for all time, any challenge to the sanctions affecting the duration of his confinement. *See Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006).

Mr. Jordan's substantive due process claim cannot proceed unless he waives for all time any challenge to the forfeiture of RREC.

Accordingly, as Mr. Jordan must respond to this Order, he may indicate whether he waives any challenge at that time.

### 2. Equal Protection

Mr. Jordan also contends that Lieutenant Bowers violated his Fourteenth Amendment right to equal protection of the laws by singling him out for punishment for not wearing his tan shirt.

"[T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injure a person.'" *Bizzaro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980) (emphasis omitted)). Equal protection does not mandate identical treatment for each individual, but rather requires that similarly situated persons be treated the same. *See Muhmmaud v. Murphy*, 632 F. Supp. 2d 171, 178 (D. Conn. 2009). Thus, to state a traditional equal protection claim, Mr. Jordan must allege facts showing that he was treated differently from other similarly situated inmates and that the different treatment was based on one of these reasons. *See Nicholson v. Hannah*, No. 3;20-cv-209(JAM), 2020 WL 3086022, at *5 (D. Conn. June 10, 2020) (citation omitted).

Mr. Jordan alleges that many other inmates in his housing unit were out of their cells during in-unit recreation and were not wearing their tan shirts. He alleges that Lieutenant Bowers singled him out to punish him for writing grievances against her.

Accordingly, these allegations are sufficient to plausibly state an equal protection claim against Lieutenant Bowers.

### F.      The Americans with Disabilities Act and Rehabilitation Act Claims

Mr. Jordan contends that the defendants have violated his rights under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., and the Rehabilitation Act, 29 U.S.C. § 794(a). The Court assumes this claim derives from his allegations that the segregation unit lacked a handicap shower.

The only difference between the ADA and RA is that the RA applies to entities receiving federal financial assistance while the ADA applies to all public entities, a distinction not relevant here. *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 & n.13 (D. Conn. 2008). Because the standards under both statutes are the same, courts treat claims under the ADA and RA identically. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

Title II of the ADA provides that "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. To state a cognizable ADA claim, Mr. Jordan must allege facts establishing three factors: (1) he is a qualified person with a disability, (2) defendants are considered an entity subject to the ADA, and (3) he was denied the opportunity to participate in or benefit from an institutional program, service, or activity, or otherwise discriminated against because of his disabilities. *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). "A qualified individual can base a discrimination claim under Title II of the ADA on one of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Lenti v. Connecticut*, No. 3:20-cv-

127(SRU), 2020 WL 427500, at *8 (D. Conn. July 24, 2020) (quoting *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks omitted)).

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or major life activities of such individual." 42 U.S.C. § 12102(1)(A). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "[I]n assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely affect major life activities from those that *substantially limit* those activities." *Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 852 (2d Cir. 2013) (quoting *Ryan v. Grae & Rybicki P.C.*, 135 F.3d 867, 870 (2d Cir. 1998)) (internal quotation marks omitted) (emphasis added).

Mr. Jordan alleges only that he has back issues and is unable to use a standard shower. He also alleges that he previously prevailed on a grievance regarding the lack of a handicap shower in the segregation unit. In light of the determination that Mr. Jordan had a meritorious grievance claim, the Court will assume, for purposes of initial review, that Mr. Jordan is disabled within the meaning of the ADA. However, Mr. Jordan will need to present evidence showing that he is a qualified individual with a disability to prevail on any ADA claim.

The ADA applies to state prisons. *See Harris v. Brennan*, No. 3:21CV906(MPS), 2021 WL 4593611, at *2 (D. Conn. Oct. 6, 2021) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S 206, 209 (1998) (ADA "includes State prisons and prisoners within its coverage")). Thus, the issue is whether Mr. Jordan has been discriminated against because of his disability.

There are three theories an individual may use to establish the third element of an ADA

claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009); *see also Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565. 573 (2d Cir. 2003) (explaining that the ADA requires that "covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities") (citation omitted). Mr. Jordan alleges that the lack of a handicap shower denied him the ability to shower for the period he was confined in the segregation unit. Thus, he has plausibly alleged ADA and RA claims. As Mr. Jordan's allegations regarding the lack of a handicap shower are directed to Deputy Warden Perez, the ADA and RA claims will proceed only as to Deputy Warden Perez.

Accordingly, as ADA and RA claims are not cognizable against prison officials in their individual capacities, *see Brown v. Hannah*, No. 3:22-CV-105(OAW), 2022 WL 487989, at *4 (D. Conn. Feb. 17, 2022) (citations omitted), this claim will proceed against Deputy Warden Perez in his official capacity only.

### G.   The Mental Health System Act and Protection and Advocacy for Mentally Ill Individuals Act Claims

Mr. Jordan contends that the defendants have violated his rights under the Mental Health System Act, 42 U.S.C. §9501, et seq., and the Protection and Advocacy for Mentally Ill Individuals Act, 42 U.S.C. § 10801, et seq. However, neither statute affords him a private right of action. *See Schlosser v. Carter*, No. 3:20-CV-434(SRU), 2021 WL 1124280, at *14 n.11 (D. Conn. Mar. 24, 2021) (Protection and Advocacy for Mentally Ill Individuals Act does not create a private right of action (citing *Brown v. Semple*, No. 3:16cv1144(SRU), 2016 WL 4408985, at *3 (D. Conn. Aug. 16, 2016) ("review of the language and terms of [Protection and Advocacy for Mentally Ill Individuals Act] indicates that no individually enforceable private rights are

conferred under it" (collecting cases)))); *Mele v. Hill Health Ctr..* 609 F. Supp. 2d 248, 255 (D. Conn. 2009) (§ 9501 "neither give[s] a plaintiff a private right of action nor create[s] enforceable federal rights").

Accordingly, all claims for violation of these statutes are dismissed with prejudice.

## H.     The Official Capacity Claims

Mr. Jordan names all defendants in their individual and official capacities but seeks no relief. Thus, the Court assumes that he seeks damages only.

Mr. Jordan may not, however, recover damages on his section 1983 claims from the Defendants, who are all state employees, in their official capacities as such claims are barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("[T]he Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity.") (citations omitted). Mr. Jordan also asserts an ADA claim, which the Court has permitted to proceed against defendant Perez in his official capacity.

Accordingly, the claims against all Defendants, except Deputy Warden Perez as discussed above, in their official capacities are dismissed.

## I.     The Claims Against Warden Martin

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of the defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"). This is true with respect to supervisory officials, as well. *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation

directly against the official without relying on a special test for supervisory liability").

Mr. Jordan includes Warden Martin as a Defendant but does not mention him in his statement of facts. Mr. Jordan includes in the exhibits attached to the Complaint Inmate Request addressed to Warden Martin and other supervisors. *See* ECF No. 1 at 36, 38, 54. Merely sending a request to a supervisory official, however, is insufficient to state a plausible claim against that official. *See Delee v. Hannigan*, 729 F. App'x 25, 32 (2d Cir. 2018) (affirming dismissal of supervisory liability claim based on failure to respond to letter); *Young v. Choinski*, 15 F. Supp. 3d 172, 190 (D. Conn. 2014) (failure of prison official to respond to inmate request insufficient to show personal involvement in Eighth Amendment claim); *see also Williams v. Hesse*, No. 9:16-CV-1343 (GTS/TWD), 2020 WL 1480105, at *10 (N.D.N.Y. Feb. 19, 2020) (sending letter to high-ranking official absent any response is insufficient to show personal involvement) (citation omitted).

Accordingly, Mr. Jordan fails to allege a plausible claim against Warden Martin.

## IV.    CONCLUSION

The case will proceed on Mr. Jordan's ADA and RA claims as directed to Deputy Warden Perez in his official capacity, the First Amendment retaliation claim against Lieutenant Bowers in her individual capacity, the Eighth Amendment conditions of confinement claim regarding bedding against Lieutenant Pearson in his individual capacity, and the Fourteenth Amendment equal protection claim against Lieutenant Bowers. The Fourteenth Amendment substantive due process claim will proceed against Lieutenant Bowers and Officer Fiore only if, in response to this Order, Mr. Jordan waives for all time any challenge to the disciplinary sanction of forfeiture of RREC.

Mr. Jordan's First Amendment claims for denial of access to the courts, interference with

the administrative remedies process, and denial of telephone access; the Fourth Amendment claims; the Fifth Amendment claims; the section 1983 claims against all defendants in their official capacities; the ADA and RA claims against all defendants in their individual capacities and against all defendants except Defendant Perez in their official capacities; and the claims for violation of 42 U.S.C. §§ 9501, 10801 are **DISMISSED** with prejudice under 28 U.S.C. § 1915A(b)(1).

The First Amendment retaliation claim against Defendants Oles and Perez, the Eighth Amendment claim for deliberate indifference to medical needs against Defendants Pearson and Michelle, the Eighth Amendment conditions of confinement claim regarding the lack of a handicap shower against Defendant Perez, the claim against Warden Martin, and the claims against Officer Silva, John Doe 1, and John Doe 2 against whom Mr. Jordan has not identified any claims, are DISMISSED without prejudice under 28 U.S.C. § 1915A(b)(1).

**Mr. Jordan has two options as to how to proceed in response to this Initial Review Order:**

(1)  If Mr. Jordan wishes to proceed immediately **only** on the claims set forth above against Defendants Perez, Bowers, and Pearson, he may do so without further delay. If Mr. Jordan selects this option, he shall file a notice on the docket by **August 2, 2024**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. The Court will then begin the effort to serve process on Defendants named above in their individual and official capacities. If Mr. Jordan also wishes to proceed on his substantive due process claim against defendants Bowers and Fiore, he should indicate in the response that he wishes to proceed on this claim and waives for all time any challenge to the loss of RREC.

(2)  Alternatively, if Mr. Jordan wishes to attempt to replead any of the claims asserted in his Complaint that have been dismissed without prejudice in order to attempt to state a viable claim, he may file an Amended Complaint by **August 2, 2024**. **An Amended Complaint, if filed, will completely replace the Complaint, and the Court will not consider any allegations made in the original complaint in evaluating any Amended Complaint.** The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein. Mr. Jordan should include in any Amended Complaint any claims the Court has determined are plausible in this Order. If Mr. Jordan elects to file an Amended Complaint, the Complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant. Mr. Jordan **may not** include in any Amended Complaint any claim that has been dismissed with prejudice in this Order.

If the Court receives no response from Mr. Jordan by **August 2, 2024**, the Court will presume that Mr. Jordan wishes to proceed on the Complaint as to the claims permitted to go forward in this Initial Review Order, and Mr. Jordan will have to show good cause if he seeks to amend the Complaint in any manner in the future.

**<u>Changes of Address</u>.** If Mr. Jordan changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Mr. Jordan must give notice of a new address even if he is incarcerated. Mr. Jordan should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Jordan has more than one pending case, he should indicate all the case numbers in the notification of change of address. Mr. Jordan should also notify Defendants or counsel for Defendants of his new address.

SO ORDERED.

Dated this 28th day of June 2024 at New Haven, Connecticut.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge